**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1198-WJM-MJW

B. ENLOW,

    Plaintiff,

v.

COVIDIEN LP (formerly Tyco Healthcare Group LP), a Delaware limited partnership,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Brett Enlow ("Plaintiff") brings this action against his former employer, Covidien LP ("Defendant"), for discrimination and related claims in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (ECF No. 1.) Before the Court is Defendant's Motion for Summary Judgment ("Motion"). (ECF No. 37.) For the reasons set forth below, the Motion is granted.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine

dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

The following relevant facts are viewed in the light most favorable to the Plaintiff, and are undisputed except where noted.

Defendant is a healthcare company that manufactures and distributes medical devices and healthcare products.  (Affidavit of Kerry Tehan ("Tehan Aff.") (ECF No. 38-9) ¶ 2.)  On May 9, 2011, Plaintiff was hired as a Senior Global Marketing Manager in Defendant's Respiratory and Monitoring Solutions Global Business Unit.  (Deposition of Brett Enlow ("Pl.'s Dep.") (ECF Nos. 38-1, 38-2, 38-3, 45-1, 48-2) p. 130.)  Dawn Bitz, Director of Ventilation, advocated in favor of hiring Plaintiff.  (Pl.'s Dep. pp. 221-22; Deposition of Dawn Bitz ("Bitz Dep.") (ECF Nos. 37-1, 37-2, 45-2) pp. 37-38, 47-48.)  Shortly thereafter, Bitz became Plaintiff's supervisor.  (Bitz Dep. pp. 37-38, 51-53.)

In July 2011, Plaintiff began seeing Dr. Jose Delgado, M.D., regarding mental health concerns and was diagnosed with clinical depression and anxiety. (Deposition of Dr. Jose Delgado ("Delgado Dep.") (ECF No. 45-13) pp. 9-10.)

On July 29, 2011, Bitz provided a coaching memorandum ("Action Plan") to Plaintiff that outlined alleged performance deficiencies and set expectations and goals. (Pl.'s Dep. pp. 185-86; Bitz Dep. pp. 165-67.) Shortly thereafter, Plaintiff's supervision was transferred to Eric Middleton, then-Marketing Director for the Ventilation Business, during Bitz's planned maternity leave from August to October 2011. (Bitz Dep. 54-55.) Plaintiff testified that he spoke with Middleton regarding his mental health symptoms in July and August, 2011, and began recording meetings because of short-term memory problems. (Pl.'s Dep. pp. 181-82, 190-93.)

On October 14, 2011, Bitz placed Plaintiff on a Performance Improvement Plan ("PIP") based on alleged continued performance deficiencies after the Action Plan. (Pl.'s Dep. pp. 218, 298; Bitz Dep. pp. 79, 109, 165, 173-74.) Bitz met with Plaintiff to discuss the specifics of the PIP, which was to run through January 2, 2012. (Bitz Dep. 174-77; ECF No. 41 at 1.) In or around October 2011, Plaintiff spoke with Middleton about his depression, and Middleton advised Plaintiff to speak with Kerry Tehan, a Human Resources ("H.R.") representative. (Pl.'s Dep. pp. 159-60.) Plaintiff informed Tehan about his depression, and on October 24, 2011, Plaintiff sent Tehan an email with an attached letter from Dr. Delgado indicating a diagnosis of major depression and anxiety. (ECF No. 41-3.) Tehan and Plaintiff discussed the possibility of an accommodation, but Plaintiff indicated that no accommodation was necessary at that time. (*Id.*; Pl.'s Dep. pp. 261-62.)

Plaintiff also spoke with Tehan about Bitz's management style, complaining that she e-mailed him in the middle of the night, did not like the way she spoke to him, and had an abrupt manner. (Deposition of Kerry Tehan ("Tehan Dep.") (ECF Nos. 40-2 & 40-3) p. 31.) In e-mails to Plaintiff, other employees of Defendant also noted disagreements with Bitz's management style, including failure to support and defend her team members, criticism directed at certain individuals over others, and a belittling and arrogant manner. (ECF No. 45-11.)

On December 28, 2011, Plaintiff filed for short-term disability benefits through Aetna, the claims administrator for Defendant's disability benefits plan. (Pl.'s Dep. p. 244; Tehan Aff. ¶¶ 13-15; ECF No. 41-6.) On February 10, 2012, Aetna sent a letter denying Plaintiff's request for short-term disability benefits based on a finding that "[t]he clinical information is not sufficient to recommend an out of work status from your occupation . . . ." (ECF No. 41-7.)

On January 31, 2012, on Bitz's recommendation, Plaintiff was terminated by written letter from Tehan, which stated that Plaintiff had failed to meet the expectations and terms in the PIP. (Bitz Dep. pp. 49-50; ECF No. 41-2.)

Plaintiff filed this action on May 6, 2013. (ECF No. 1.) Defendant's Motion was filed on April 7, 2014. (ECF No. 37.) Plaintiff filed a Response (ECF No. 45), and Defendant filed a Reply (ECF No. 46).

### III.  ANALYSIS

Plaintiff's Complaint brings the following eight claims:[1] (1) discrimination based

---

[1] Plaintiff originally brought an additional claim for a violation of the Family and Medical Leave Act. (ECF No. 1 ¶¶ 78-82.) Plaintiff subsequently voluntarily dismissed that claim. (ECF Nos. 54 & 57.)

on gender in violation of Title VII; (2) discrimination based on disability in violation of the ADA; (3) retaliation in violation of the ADA; (4) retaliation in violation of Title VII; (5) hostile work environment in violation of the ADA; (6) hostile work environment in violation of Title VII; (7) denial of a short-term disability claim in violation of ERISA; and (8) fraudulent misrepresentation.  (ECF No. 1 at 10-16.)  The familiar *McDonnell-Douglas* burden-shifting test applies to each of Plaintiff's Title VII and ADA discrimination claims.  See *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207 (10th Cir. 2007); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination, hostile work environment, or retaliation.  *Id*.  If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for its employment decision.  *Id*.  If Defendant does so, the inference of discrimination drops out, and the burden shifts back to Plaintiff to offer evidence that gender or disability was a determinative factor in the employment decision or that Defendant's non-discriminatory reason was merely pretext.  *Id.*

Defendant moves for summary judgment on all eight claims.  The Court will address each in turn below.

### A.   Gender Discrimination

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  "The critical *prima facie* inquiry in all cases is whether the plaintiff has demonstrated that the

adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"[2] *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008) (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)). "There must simply be a logical connection between each element of the *prima facie* case and the inference of discrimination." *Plotke*, 405 F.3d at 1100.

Here, Defendant argues that Plaintiff has presented no evidence supporting any inference that Defendant discriminated against him based on his gender. (ECF No. 37 at 24.) Plaintiff argues that such an inference is established with evidence that Plaintiff's male co-workers also suffered discrimination by Bitz, as compared to similarly situated female employees. (ECF No. 45 at 19.) However, Defendant contests whether such evidence actually supports Plaintiff's argument, pointing out that Plaintiff has failed to identify any similarly situated female employee who was treated more favorably. (ECF No. 46 at 16.)

The Court agrees that the evidence Plaintiff cites fails to establish any inference of discrimination on the basis of gender. Plaintiff first cites a series of e-mails from three of Plaintiff's former co-workers describing various incidents of poor management by Bitz. (ECF No. 45-11.) However, none of these e-mails connects any of these

---

[2] Defendant argues that, because Plaintiff is a male, his gender discrimination claim is subject to a heightened *prima facie* standard under *Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992), which requires Plaintiff to present evidence establishing background circumstances that Defendant discriminates against males, or that gender was a "but for" cause of his termination. (ECF No. 37 at 23-24.) The Court agrees with other courts in this district that have expressed doubt as to whether *Notari* remains good law. *See, e.g., Kenfield v. Colo. Dep't of Pub. Health & Env't*, 837 F. Supp. 2d 1232, 1236 n.2 (D. Colo. 2011); *Jordan v. Dillon Cos.*, 2014 WL 6516023, at *3 n.10 (D. Colo. Nov. 20, 2014). However, as the Court finds that Plaintiff has failed to meet his burden to establish a *prima facie* case even under the general standard, the Court need not conclusively determine whether a heightened standard applies.

incidents to gender, and one of the three e-mails was authored by Tricia Coleman, a female, who suggested that the reason Plaintiff was "squelched" was "because [he] challenged the norm and spoke up for what [he] believed in". (*Id.* p. 2.)  Thus, the Court finds this evidence does not support an inference of gender discrimination.

Next, Plaintiff cites his own testimony that Bitz "had a way of coming across with men that was very demeaning and kind of treated all the guys . . . like they were stupid and incompetent." (Pl.'s Dep. pp. 289-91.)  In contrast, Plaintiff testified that with women employees, Bitz "was very supportive, coddling and just kind of, Hey, you know, go think about this, or, Yeah, let's work through this, rather than, Look, you screwed up." (*Id.* p. 291.)  These conclusory statements are insufficient to meet Plaintiff's *prima facie* burden.  While Plaintiff's testimony mentions two female employees—Stacy and Pamela—whom he asserts were treated better than Plaintiff, Plaintiff fails even to allege that such employees were similarly situated.  (*See id.*; ECF No. 45 at 19.)  Thus, Plaintiff's statement in his Response that he has presented evidence showing that male employees suffered disparate treatment in comparison to female employees is not supported by the evidence.

In short, Plaintiff has provided no evidence supporting an inference that Defendant discriminated against him based on his gender, and thus has failed to establish a *prima facie* case.  *See Plotke*, 405 F.3d at 1100.  Accordingly, the Court need not proceed through the remainder of the *McDonnell Douglas* analysis, and Defendant's Motion is granted as to Plaintiff's claim for gender discrimination.

**B.     Disability Discrimination**

The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination, Plaintiff must show: (1) he was disabled; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) his employer discriminated against him because of his disability. *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012). Defendant argues that Plaintiff has failed to make the requisite showing as to all three of these elements. (ECF No. 37 at 27.)

Under the ADA, a person is disabled if he has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of such an impairment, or is regarded by his employer as having such an impairment. 42 U.S.C. § 12102(1). To establish that he has a disability, Plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff has presented evidence that he was diagnosed with major depression and anxiety. (ECF No. 41-3 at 4; Delgado Dep. pp. 26, 44.) Plaintiff has cited his own testimony that he had difficulties with "high-level thinking" and short-term memory, and was having anxiety attacks that produced severe diarrhea or vomiting. (Pl.'s Dep. pp. 160, 180-82.) As "thinking" is a major life activity, the Court finds that

Plaintiff has sufficiently identified such an activity that may be impaired. However, Plaintiff has not presented any medical evidence that his disability causes such substantial limitations, instead relying solely on his own testimony. As the Tenth Circuit has recently clarified, this "lay evidence" may describe a plaintiff's symptoms, but is inadmissible to support the medical conclusion that his limitations are caused by his condition. *Felkins v. City of Lakewood*, __ F.3d __, 2014 WL 7210892, at *4-*5 (10th Cir. Dec. 19, 2014). Plaintiff has failed to cite any admissible evidence supporting a finding that his "impairment substantially limits one or more [major life] activities." *Carter*, 662 F.3d at 1142. Thus, the Court finds that Plaintiff has failed to establish that he has a disability under the ADA, and has failed to establish a *prima facie* case of disability discrimination. *See Robert*, 691 F.3d at 1216. As Plaintiff not met his burden in the first prong of the *McDonnell Douglas* analysis, the burden does not shift to Defendant.

Accordingly, Defendant's Motion is granted as to Plaintiff's claim for disability discrimination, and the Court need not consider the remainder of Defendant's arguments as to that claim.

**C.     Retaliation**

Plaintiff raises two retaliation claims, one based on his disability and one based on his gender. (ECF No. 1 ¶¶ 38-64.)

The *McDonnell Douglas* burden-shifting analysis discussed above also applies to Plaintiff's retaliation claims. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). In order to make out a *prima facie* case of retaliation, a plaintiff must

present evidence that: "(1) []he engaged in protected opposition to discrimination; (2) []he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between h[is] opposition and the employer's adverse action." *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1215 (10th Cir. 2010) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007)). "The requisite causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *McGarry v. Bd. of Cnty. Comm'rs*, 175 F.3d 1193, 1201 (10th Cir. 1999) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

Defendant argues that, as to both of Plaintiff's retaliation claims, he has failed to identify any protected activity that caused Defendant to retaliate, and has failed to establish any causal nexus between such activity and any adverse actions. (ECF No. 37 at 30.) The Court agrees that as to both claims, Plaintiff's Complaint merely alleges discrimination, and does not identify any protected activity. (ECF No. 1 p. 11-13.) In his Response, Plaintiff cites a case which "addresses the adverse employment action standard being close in time to the protected activity of advising his employer of his disability." (ECF No. 45 at 28-29 (citing *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1052 (10th Cir. 2011)).) However, *C.R. England* addresses a retaliation claim in which the alleged protected activity was the filing of a claim with the E.E.O.C., not providing notice of a disability to an employer. 644 F.3d at 1050-51. Furthermore, Plaintiff has not alleged that he "has opposed any act or practice made unlawful by [the ADA] or . . . made a charge, testified, assisted, or participated in any manner in an investigation,

10

proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Instead, Plaintiff skips the first prong of the *prima facie* case, and describes numerous adverse actions he suffered in the months after Plaintiff's medical diagnosis. (ECF No. 45 at 29-30.) Finally, Plaintiff's Response fails even to address his Title VII retaliation claim, making no reference to any protected activity under that statute or a connection between such activity and the adverse actions.

The Court has no obligation to scour the record in search of evidence of a protected activity in which Plaintiff engaged. "[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation marks omitted). Plaintiff has failed to present any evidence satisfying his *prima facie* burden or presenting a factual dispute as to either of his retaliation claims. Accordingly, the Court finds that summary judgment is appropriate, and Defendant's Motion is granted as to both retaliation claims.

**D.     Hostile Work Environment**

Plaintiff raises two hostile work environment claims, one based on gender and the other based on disability. (ECF No. 1 ¶¶ 65-71.) To meet his *prima facie* burden with respect to his hostile work environment claims, Plaintiff is required to show that: (1) his workplace was "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [his] employment," and (2) he "was subjected to this abusive environment because of his" gender or disability.

*Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007). "A discriminatory and abusive environment must affect the employee's work environment so substantially as to make it intolerable for h[im] to continue". *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 170 (10th Cir. 1996). In determining whether an actionable hostile work environment existed, the Court must consider "all the circumstances," *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), viewed through the perspective of a reasonable person in Plaintiff's position. *Montes*, 497 F.3d at 1170.

Defendant argues that Plaintiff has failed to point to sufficient facts showing that he was subjected to a sufficiently severe or pervasive work environment, or that he was subjected to such an environment because of his gender or disability. (ECF No. 37-1 at 8-9.) In response, Plaintiff contends that the hostile work environment was evidenced by "the micromanaging, harassing, demeaning and punitive manner in which Dawn Bitz was supervising him", which included "Bitz sending e-mails to Plaintiff at all hours of the night . . . and expecting their response 'throughout the night'", and her "attempt[] to circumvent the peer review process by requesting Plaintiff's reviews from his peers be sent directly to her, rather than Defendant's H.R. Department—who quickly corrected her actions." (ECF No. 45 at 30-31.) The Court agrees with Defendant that such limited incidents, even viewed in the light most favorable to Plaintiff, are insufficient to constitute a work environment "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [his] employment." *Montes*, 497 F.3d at 1170.

Furthermore, even if Plaintiff had sufficiently established a hostile work environment, he has made no attempt to establish a nexus to his gender or disability. *See Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment."); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) (the "critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). Plaintiff has failed to cite any evidence demonstrating a material factual dispute as to whether any hostility he suffered in the workplace was the result of his gender or disability as opposed to general workplace mistreatment. Accordingly, summary judgment in favor of Defendant as to both hostile work environment claims is appropriate.

**E.     ERISA**

Plaintiff's next claim asserts that Defendant denied Plaintiff's right to receive short-term disability benefits in violation of ERISA. (ECF No. 1 ¶¶ 72-77.) In Plaintiff's Response to the Motion, he clarifies that, although he does not dispute that Aetna—not Defendant—was the party that actually denied his short-term disability claim, Defendant is still liable under ERISA for interfering with his rights to receive short-term disability. (ECF No. 45 at 31.) Plaintiff explains that Defendant is liable for such interference because Defendant failed to submit Plaintiff's job description to Aetna in conjunction with Plaintiff's application for benefits, and because "A[etna]'s benefits department also did not provide Plaintiff information, in a timely manner, which enabled him to appeal

the denial of his short term disability application. [N]ot following Defendant's policies and procedures in providing information to it[]s insurance company interfer[]ed with Plaintiff asserting his rights under the statute." (*Id.*)

The Court finds Plaintiff's arguments insufficient to defeat summary judgment on this claim. First, the evidence Plaintiff cites shows that Aetna's denial of Plaintiff's short-term disability application was based on its finding that the "[employ]ee has no cognitive, emotional or behavioral limitations to support claim" and concluded, "RECOMMENDATION: unable to support clinically". (ECF No. 50 at 2.) This evidence shows that Aetna denied Plaintiff's claim based on its evaluation of his medical records, and does not support Plaintiff's argument that Defendant's failure to provide his job description to Aetna impacted its denial of his application. Second, Plaintiff appears to allege that Defendant is somehow responsible for Aetna's failure to timely provide Plaintiff information regarding any appeal of its decision, but provides no argument making such an allegation plausible, and cites no evidence in support. (ECF No. 45 at 31.)

Plaintiff's failure to cite any evidence in support of his claim, in and of itself, is sufficient reason to grant summary judgment in favor of Defendant. *See Mitchell*, 218 F.3d at 1199 (summary judgment is appropriate when an opposition is "limited to conclusory statements and . . . void of cites to the specific portions" of the record containing relevant evidence). As Plaintiff has provided no support for his arguments, the Court finds summary judgment is appropriate on Plaintiff's ERISA claim.

**F.    Fraudulent Misrepresentation**

Plaintiff's sole remaining claim is a common law tort claim asserting that

Defendant fraudulently misrepresented to Plaintiff that he would receive clinical training on the products he was marketing, and that he would receive coaching, guidance, and training which would permit him to successfully complete his Action Plan and PIP. (ECF No. 45 at 31-32.) Unlike Plaintiff's other claims, this is not a federal claim over which the Court has subject matter jurisdiction based on a federal question; however, the Court has supplemental jurisdiction while the federal claims are pending. 28 U.S.C. § 1367; *Grable & Sons Metal Prods., Inc. v. Darue*, 545 U.S. 308, 312 (2005) (a federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law").

The Court has found summary judgment in Defendant's favor is appropriate as to all of Plaintiff's federal claims. If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by statute*, *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)). Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiff's fraudulent misrepresentation claim, and dismisses it without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 37) is GRANTED as to Plaintiff's claims under the ADA, Title VII, and ERISA (First, Second, Third,

       Fourth, Fifth, Sixth, and Seventh Claims), and judgment shall enter in favor of Defendant on these claims;

2.     Plaintiff's claim for fraudulent misrepresentation (Ninth Claim) is DISMISSED WITHOUT PREJUDICE; and

2.     The Clerk of Court shall enter judgment and close the case. Defendant shall have its costs.

Dated this 30th day of December, 2014.

BY THE COURT:

_[signature]_

William J. Martinez  
United States District Judge